**The UNITED STATES of America**

**v.**

**Joseph TAYLOR, Defendant.**

**No. 69–CR–276.**

United States District Court
E. D. New York.

Nov. 26, 1969.

Edward R. Neaher, U. S. Atty., for the United States, by Vincent J. Favorito, Asst. U. S. Atty.

Simon Chrein, Legal Aid Society, New York City, for defendant.

MEMORANDUM

JUDD, District Judge.

This case presents a novel question concerning the procedure to be followed in connection with a civil commitment under the Narcotic Addict Rehabilitation Act of 1966. 28 U.S.C. §§ 2901–2906, Title I of Pub.L. 89–793.

Defendant was committed to the custody of the Surgeon General of the United States under 28 U.S.C. § 2902, pursuant to an order signed by Judge Weinstein on July 17, 1969. An information had been filed that day charging him with possession of a New York City welfare check known to have been stolen from the United States mail. 18 U.S.C. § 1708.

The Acting Chief of the Clinical Research Center of the National Institute of Mental Health at Lexington, Ken-

tucky, in a subsequent written report to Judge Weinstein stated that, because of his uncooperative attitude, defendant was not likely to be rehabilitated. Following a letter from the defendant which challenged the conclusion and asked for a psychiatric examination, Judge Weinstein signed a second civil commitment order dated October 2, 1969.

The Chief of the Clinical Research Center has now stated, in a written report dated November 12, 1969, that

> "the patient is a narcotic addict within the meaning of the law who is not likely to be rehabilitated through treatment under the provisions of the Narcotic Addict Rehabilitation Act of 1966."

The text of the report indicates that one of the reasons for rejecting defendant is "our present limited number of treatment personnel."

The Act, in Section 2902(b), provides that copies of the report shall be made available to the individual involved and to the United States Attorney (which has been done) and that:

> "If the court, acting on the report and other information coming to its attention, determines that the individual is not an addict or is an addict not likely to be rehabilitated through treatment, the individual shall be held to answer the abeyant charge."

█ Successful treatment under the Act results in dismissal of the criminal charge when the treatment program has been completed. Section 2902(c). The determination that the addict is not likely to be rehabilitated through treatment results, therefore, in his having to face a criminal charge and possible imprisonment. Fair procedure requires that he be given an opportunity for a hearing before a civil commitment is terminated and criminal proceedings resumed. Compare Kent v. United States, 383 U.S. 541, 552–557, 86 S.Ct. 1045, 1053–1055, 16 L.Ed.2d 84 (1966).

█ Such a hearing may be informal. Section 2902(b) of the Act, in providing that the court act "on the report and other information coming to its attention," apparently contemplates that the report can be accepted without oral testimony and that other information can be supplied by witnesses, affidavit, or other ways acceptable to the court.

The situation is analogous to that in the *Kent* case, which involved waiver of civil jurisdiction over a juvenile charged with crime. The court there said with respect to the required hearing on the waiver of civil jurisdiction (383 U.S. at 562, 86 S.Ct. at 1057):

> "We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment."

The Act provides a second ground for denying an addict the benefits of Title I, stating that:

> "No individual shall be committed under this chapter if the Surgeon General certifies that adequate facilities or personnel for treatment are unavailable." Section 2902(b).

This proviso recognizes that the full benefit of the narcotic addict rehabilitation program depends on Congressional appropriation of adequate funds. Nevertheless, the denial of Title I treatment to an addict because of insufficient personnel belies the promise made by President Johnson when he recommended the passage of the Act that

> "This measure can reclaim lives. It can begin to eliminate the driving hunger for drugs that leads so many into lives of crime and degradation." 3 U.S.Cong. & Ad.News, 89th Cong., 2d Sess., 1966, p. 4249.

Defendant should promptly be brought before the court so that he may show cause why the court should not make the determination specified in Section 2902(b) and hold him to answer on the pending charge.

The parties are invited to address themselves at that time also to the question whether defendant, if convicted, may then be committed to the custody of the Attorney General pursuant to Title II of the Act (18 U.S.C. §§ 4251–4255) to make a new determination whether he is an addict and is likely to be rehabilitated through treatment.

Congress apparently contemplated that addicts could have the benefit of both sections, to the extent that facilities are available. With respect to Title II, House Report No. 1486 states:

"It is also possible that persons who did not complete the civil commitment program successfully can be considered for further treatment. The fact that an individual was unsuccessful in a course of treatment should not be taken as a conclusive indication of subsequent failure." 3 U.S.Cong. & Ad.News, 89th Cong., 2d Sess., 1966, p. 4252.

The court may hesitate to give the defendant a third chance for treatment, but the possibility is not excluded at this time.