**UNITED STATES of America,**
**Plaintiff,**

v.

**Richard L. THORNTON, Defendant.**

**Crim. A. No. 2083.**

United States District Court,
D. Delaware.

June 16, 1972.

**250**

Norman Levine, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Robert B. Walls, Jr., Wilmington, Del., for defendant.

## OPINION

LAYTON, District Judge.

Richard Leon Thornton has petitioned this Court for reinstatement into the Title I program of the Narcotic Addict Rehabilitation Act.

On November 19, 1970, Thornton was charged in a four count indictment with receiving and concealing two automobiles moving in interstate commerce, knowing them to have been stolen, in violation of 18 U.S.C. § 2313, and with causing to be transported in interstate commerce two falsely made and forged securities, knowing them to have been falsely made and forged, in violation of 18 U.S.C. § 2314. If convicted and sentenced under each count, Thornton was faced with maximum penalties of up to 30 years in jail and $30,000 fine.

On January 25, 1971, pursuant to the provisions of 28 U.S.C. § 2901 et seq., Thornton was committed to the custody of the Surgeon General at Lexington, Kentucky, with the understanding that if he were found to be a narcotic addict likely to be rehabilitated through treatment, and successfully completed treatment for a period of up to thirty-six months, the pending criminal charges lodged against him in the indictment would be dismissed.[1]

Thornton was found to be a narcotic addict likely to be rehabilitated through treatment and was committed for treatment to the National Institution of Mental Health Clinical Research Center at Lexington, Kentucky, and was released to supervised aftercare treatment in Delaware in May of 1971.

Thornton returned to drug use shortly thereafter. On September 11, 1971, he was charged with the possession of a hypodermic needle and syringe. On April 21, 1972, he was sentenced by the Superior Court of New Castle County to a term of two years imprisonment on that charge. In addition, he was charged with larceny by trick in Delaware County, Pennsylvania, and failed to appear at his preliminary hearing scheduled for October 8, 1971. Furthermore, he was charged with breach of release in the Municipal Court on November 18, 1971, and with obtaining money by false pretenses, in Superior Court of New Castle County on December 15, 1971.

On January 18, 1972, Thornton voluntarily committed himself to the Drug Detoxification Center, State Office of Drug Abuse. Pursuant to 2903(b), the Surgeon General issued a warrant against Thornton and had him returned to Lexington on February 29. On March 16, the representative of the Surgeon General at Lexington, Jerome Aronowitz, M. D., determined that Thornton could not be further treated as a medical problem and requested the termination of Thornton's commitment, because he had "proven unable to adjust to the program."

On March 28, this Court signed an order terminating Thornton's commitment, and the United States issued a warrant for his arrest and apprehension, based upon the November 19, 1970, indictment, scheduling his arraignment for April 7.

On April 6, the defendant filed a motion seeking both a continuance of the arraignment and a hearing on the termination of the civil commitment. The arraignment was continued and the hearing was held on May 12, 1972.

The civil commitment and rehabilitation of narcotic addicts is a program con-

---

1. 2902(a)

[I]f he successfully completes treatment the charge will be dismissed, but if he does not, prosecution on the charge will be resumed.

sisting of several stages. The first stage is an initial examination after which the Court determines whether the individual is a person likely to be rehabilitated by the program.[2] If an individual is found to be such a person, "the court shall commit him to the custody of the Surgeon General for treatment."[3]

The second state is the actual treatment in the institution. "If the Surgeon General determines that the individual cannot be further treated as a medical problem, he shall advise the court. The court shall thereupon terminate the commitment."[4]

The third stage is supervised aftercare in the community upon an individual being conditionally released by the Surgeon General. If "it is determined that an individual has returned to the use of narcotics, the Surgeon General shall inform the court . . . and make a recommendation as to whether treatment should be continued. The court may affirm the commitment or terminate it."[5]

Thornton was found to be such a difficult patient upon his return to the second stage,[6] that the representative of the Surgeon General determined that Thornton could not be further treated as a medical problem.

The government argues that Thornton should not be granted a hearing contesting the termination of his civil commitment. It contends that while 2903(b) permits the Court to continue or terminate civil treatment after an individual returns to the use of narcotics, 2902(c) does not permit the Court to take any action other than to terminate a civil commitment if the Surgeon General determines that the individual cannot be further treated as a medical problem.

While such an interpretation of the language of the statute is possible, even the most rudimentary concepts of due process would require that the Court exercise some judgment in ruling on such a termination.[7] This result is especially clear in situations where the stakes are so great to the person enrolled in the program—the dismissal of the criminal charges lodged against him—and the burden on the government is very slight.

Such a result does not mean that a full-scale hearing must be held on each and every motion in opposition to a civil commitment termination. In almost all such cases, affidavits or depositions will be sufficient to raise the issues in their proper perspective.

The holding suggested by this Court is in accordance with the case of United States v. Taylor.[8] Taylor had been committed to Lexington for his stage one examination, and was found not likely to be rehabilitated. The Court held that in view of the individual having to face a

---

2. 2902(a), (b).

3. 2902(b).

4. 2902(c).

5. 2903(b).

6. The report of Dr. Aronowitz, dated March 16, reads:

 "Since his admission his behavior has indicated a lack of motivation for rehabilitation. He fails to complete work assignments and participates poorly in therapy groups. In addition, he refuses to cooperate with medical personnel in the treatment of his medical ailments.

 "Mr. Thornton is under medical treatment for recent conversion of his tuberculin skin test and for his chronic hepatitis. The main objection in the medical care of this patient is his insistence on prescribing modes of therapy for himself. He shows little motivation to follow the medical advice given him and has rejected all attempts to reason with him. For example, upon his discharge from this institution last year he was warned against further damage to his liver. Despite this he continued to drink heavily on the outside. While at this Center certain activities have been prescribed for him and he has consistently refused to participate in these activities.

 "Under the circumstances we do not feel that further hospitalization is likely to lead toward rehabilitation. We therefore recommend that Mr. Thornton's commitment be revoked."

7. Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

8. 305 F.Supp. 1150 (E.D.N.Y.1969).

criminal charge and possible imprisonment:

"[f]air procedure requires that he be given an opportunity for a hearing before a civil commitment is terminated and criminal proceedings resumed." [9]

The court held that the hearing could be informal:

"The report (of the Surgeon General) can be accepted without oral testimony and . . . other information can be supplied by witnesses, affidavit, or other ways acceptable to the court." [10]

The government argues that *Taylor* is inapposite because the hearing was held after the first stage of the individual's treatment program. This Court, however, fails to see why that distinction makes a difference. Nowhere in the statute is there language requiring any hearing to be held. *Taylor* held that some form of hearing is required in order to comport with the due process guarantees of the Constitution. It would seem obvious that such logic should carry over to the second and third stages of the treatment program because the stakes facing the individual are no less and the burden on the government no more than when a termination is sought at the first stage of the program.

Having determined that Thornton was entitled to a hearing, this Court now turns to the hearing held on May 12 to decide whether this Court should reverse its order of March 28, terminating Thornton's civil commitment.

Many witnesses, including Mr. Benjamin F. Bell of the State Office of Drug Abuse spoke highly of Thornton's character and leadership abilities. They also decried the inadequate aftercare program available to Thornton when he was released to Wilmington in May of 1970. Accepting all this testimony as true, however, its weight is wholly irrelevant to a determination that Thornton can no longer be treated as a medical problem for the reason that the appeal really goes to a period after Thornton returned to Lexington on the second occasion.

The only evidence offered by Thornton to contest the report of Dr. Aronowitz is his own testimony and a letter from Dr. Aronowitz. Thornton characterized the March 16 report of Dr. Aronowitz as "lies" and implied that the program directors were prejudiced against him. He claimed that any problems in his treatment and participation were attributable to his physical maladies. However, the letter offered by Thornton to bolster his contentions [11] clearly shows that Dr. Aronowitz was aware of Thornton's illness. This Court infers that since Dr. Aronowitz's awareness did not change his recommendation for termination, he must have believed that there were many other reasons why Thornton could "no longer be treated as a medical problem." [12] Furthermore, it is likely that the nature of the language in the March 20 letter was subdued to aid Thornton in obtaining medical aid on his release. The March 20 letter was not to be sent to the Judge or have any bearing on the termination of the civil commitment. Language such as was used in the March 16th letter would have made it much more difficult for Thornton to obtain any medical help on his release from a private physician.

The conclusion I draw from Thornton's own testimony is that he was an uncooperative member of this program. From the very first, he would not cooperate with the Delaware program following his initial release, giving as a reason that it centered on alcoholism rather than drug control. The fact is, however, he had a drinking problem and it was not for him to determine how the local program should be run. Rather,

9. *Ibid.*, 1151.

10. *Ibid.*, 1151.

11. The letter dated March 20, 1972: "Due to symptoms arising from Mr. Thornton's hepatitis, he has been unable to participate in our therapeutic program. It is my recommendation that Mr. Thornton receive medical care for his hepatitis in his home community."

12. See n. 6, *supra.*

it was for him to abide by it and try to profit from it.

 The same observation applies to his attitude on his return to Lexington for the second time. He states that an inmate returning for a second period of supervision is always regarded as one who was a failure and there is a negative, if not actually biased, attitude on the part of the personnel towards such a person. This, I do not believe. Thornton testified also he did not like the Lexington program and felt that the staff was incompetent. Obviously, Thornton's whole attitude was bad and he presented a difficult problem for the staff. He appears to be a "do it my way" type of personality and it is clear from his testimony and aggressive attitude on the witness stand that the termination of his civil commitment was proper for the reasons stated in Dr. Aronowitz's letter of March 16th.

Submit order.