THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM EUGENE PRATHER, JR., Defendant-Appellant.

Fourth District   Nos. 12851, 13970 cons.

Opinion filed December 12, 1977.

CRAVEN, J., concurring.
MILLS, P. J., dissenting.

Richard J. Wilson and John L. Swartz, both of State Appellate Defender's Office, of Springfield, for appellant.

Paul C. Komada, State's Attorney, of Charleston (G. Michael Prall, Marc D. Towler, and Kai A. Wallis, all of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals from the order of the trial court revoking supervision under the Dangerous Drug Abuse Act (Ill. Rev. Stat., ch. 91½, par. 120.1 *et seq.*), as amended effective June 27, 1974, entering a finding of guilt on evidence theretofore heard at bench trial and sentencing defendant to 4 to 12 years for burglary and 1 to 3 years for unlawful use of weapons.

An order dated August 18, 1975, found that defendant was eligible to elect treatment under the supervision of the Department as provided in the Dangerous Drug Abuse Act; that a trial upon guilt had been held before the court and that the Department had advised in writing that it would accept responsibility for supervision and treatment under such Act. It was thereupon ordered that defendant be placed "under the supervision of the Department of Mental Health for treatment" for a maximum of 2 years to be treated or released at the direction of the Department; that the Department shall "certify to the court when and if the Defendant completes the treatment program and if such treatment

was successful" and that the criminal charges "shall be continued without final disposition until such certification from the Department of Mental Health."

On November 19, 1975, the State's Attorney filed a "petition to revoke supervision" which alleged that defendant had violated the statute in that he failed to observe the requirements set down by the Department of Mental Health and the Stonehedge Clinic as provided by the Dangerous Drug Abuse Act.

At a hearing on November 26, the State's Attorney introduced the testimony of a certified drug specialist employed by the Stonehedge Clinic, who testified to certain details concerning defendant's failure to follow the requirements of the Clinic and to adequately participate in the program provided. It appears that Stonehedge was certified to provide contributory services for treatment. The witness also testified that Stonehedge had terminated defendant from its program and would not accept him for further treatment. At a hearing resumed on December 17, defendant testified concerning the reasons justifying his failure to follow rules and to participate freely in the group therapy.

The court terminated the supervision and proceeded hearing arguments upon the issue of the suspended trial. Having entered a judgment of guilt the court heard evidence upon a request for probation and for sentencing and imposed sentence.

Upon appeal defendant urges (1) that he was denied due process for want of "adequate notice of the violations" and adequate opportunity to prepare a defense and (2) defendant was denied due process by the failure of the State to produce any evidence that the Department of Mental Health (Department), had determined that defendant could no longer be treated as a medical problem.

It appears that all parties treated the proceeding as a form of revocation of probation. Such conclusion requires examination of the structure and scheme of the Dangerous Drug Abuse Act.

The Act created a Dangerous Drugs Commission and gave it broad powers to establish drug rehabilitation facilities, provide training and education for addicts and to place addicts for "treatment supervision," and to make agreements with public and private agencies to provide treatment. The Department of Mental Health is designated as the administering arm exercising the powers and duties provided by statute. Ill. Rev. Stat. 1975, ch. 91½, par. 120.6.

The statute (Ill. Rev. Stat. 1975, ch. 91½, par. 120.7) provides that in administering the supervised treatment:

> "The decision of the Department as to whether to offer treatment to an individual and as to the discontinuance of treatment to any individual is final and not subject to appeal."

Effective in 1976, the statute was amended to replace the word "Department" by the word "Commission." Ill. Rev. Stat. 1976 Supp., ch. 91½, par. 120.7(b)(2).

As a person charged with crime, the defendant was placed under the supervision of the Department as provided by section 9 of the Dangerous Drug Abuse Act. That statute includes the provision that:

"No individual may be placed under the supervision of the Department for treatment under this Section unless the Department accepts him for treatment." Ill. Rev. Stat. 1975, ch. 91½, par. 120.9.

We note the same statutory requirement that the individual be accepted for treatment by the Department in section 10 (par. 120.10) (the individual has been convicted and placed on probation with a condition that he undergo supervised treatment), and section 11 (par. 120.11) (the supervised treatment is a condition of parole).

Section 9 (par. 120.9) provides that after the court has placed defendant under the supervision of the Department, the Department may certify that he has successfully completed the treatment program, but:

"If, by the expiration of the period [not to exceed 2 years], the Department has not been able to certify that the individual has completed his treatment program, the pending proceeding may be resumed. If, however, the court believes that the individual will complete his treatment on a voluntary basis, it may, in its discretion, dismiss the criminal charge. If, before the supervisory period expires, the Department determines that the individual cannot be further treated as a medical problem, it shall so advise the court. The court shall thereupon terminate the supervision, and the pending criminal proceeding may be resumed. * * *." Ill. Rev. Stat. 1975, ch. 91½, par. 120.9.

To support the claim of a "full panoply" of constitutional rights, defendant cites *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756, and *Morrissey v. Brewer* (1972), 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593.

In *Gagnon*, defendant was convicted and sentenced. The sentence was suspended and he was placed on probation. It appears that in Wisconsin probation is administered by an administrative agency as distinguished from the sentencing court. Upon revocation of probation by such agency, defendant was returned to serve the suspended sentence. In *Morrissey*, the defendant was sentenced and subsequently released on parole. Upon revocation of parole by the administrative agency he was returned to prison.

The issue in the respective *habeas corpus* proceedings was whether due process required a hearing by the administrative agency before parole or

probation was revoked. The opinions set forth the requirements of notice and hearing necessary to due process before the agency could revoke and return the defendant to imprisonment.

In these proceedings under section 9 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1975, ch. 91½, par. 120.9), there are substantial differences in the consequences of termination of supervised treatment. The defendant had not been convicted and sentenced by the court, the termination of supervised treatment simply returned the defendant to the court for further consideration in the suspended proceedings.

We conclude that this appeal is controlled by the opinion in *People v. Phillips* (1977), 66 Ill. 2d 412, 362 N.E.2d 1037. In that case the issue was presented in the context of section 8(e) of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1975, ch. 91½, par. 120.8(e)) stating the conditions of eligibility to elect treatment as one charged with or convicted of an offense. One requirement is that if the defendant is on parole or probation, the appropriate authority must have consented to defendant's election. The probation officer refused consent and the trial court found defendant ineligible for treatment as an addict.

The appellate court concluded that the trial court was the appropriate probation authority to consent and reversed the trial court. The supreme court, however, reversed the appellate court. The rationale of the opinion is that the order for supervision is not a "sentence" under the Unified Code of Corrections, *i.e.*, it is not a "[d]isposition imposed by the court on a convicted defendant." The court said:

> "In such a case, treatment, unlike a sentence, is not a consequence of defendant's guilt. It is instead 'an alternative to a criminal conviction and the regular sentencing alternatives available under the Unified Code of Corrections.' (65 Ill. B.J. 142. 144 (1976).) If he is a probationer, his probation officer's consent must affirmatively be shown. Since he has been charged with, but not yet convicted of, a crime, failure to obtain the proper consent prohibits the court from placing him in the Act's treatment program *in lieu of* both conviction and sentence. The court may, however, without consent, proceed to the conviction stage and, if defendant is convicted, accomplish a similar result by imposing a sentence of probation with the condition, pursuant to section 5—6—3(b)(4) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—3(b)(4)), that defendant obtain treatment for drug addiction. The required consent of the probation officer, then, does not have the effect of dictating the sentence or infringing upon the sentencing power of the court. The sentence imposed by the court, the consequence of defendant's guilt, is that defendant will serve a

term of probation, for which no consent by the probation officer is needed." 66 Ill. 2d 412, 416-17, 362 N.E.2d 1037, 1039.

Continuing, the court said:

"[B]ut if a defendant is on probation or parole and elects to take treatment under the plan it is necessary to have the cooperation of the probation or parole officer whose duty and responsibility it is to supervise the defendant. [Citation.] Without the assured cooperation of these officers the success of any treatment program would be seriously jeopardized. It is only after the eligibility requirements are satisfied that the court determines whether or not the defendant should be admitted to treatment under the Act." 66 Ill. 2d 412, 417-18, 362 N.E.2d 1037.

It may be said that the statutory authority of the Commission is greater than that of the probation officer. It can "consent," *i.e.*, accept for treatment and it can terminate treatment. The cooperation of the Department in providing treatment is clearly more essential than that of the probation officer in *Phillips*. Upon the termination of treatment and return of the defendant to the trial court, it retains authority to impose a sentence of probation as in *Phillips*.

The record in this case shows that defendant, at the time of hearing in aggravation and mitigation, did request probation with a condition of attending a counselling facility. The trial court considered the evidence and the arguments by counsel and exercised his discretion as contemplated in *Phillips*.

In the light of defendant's assertion of right to the "full panoply" of constitutional rights in the trial court, we have examined the available authorities arising under 28 U.S.C.A. §2902, which provides a Federal statutory scheme superficially comparable to that in Illinois. The statute provides for a civil commitment, including confinement, in lieu of prosecution. The defendant electing treatment is not permitted to voluntarily withdraw. *Robinson v. Rodgers* (D.C. Cir. 1973), 481 F.2d 1110.

That statute provides for recommendation of treatment based upon examination, but there is no provision comparable to that in Illinois that the treating facility shall determine whether it will accept the defendant for treatment. On the contrary, that statute provides that the court may commit for treatment unless the Surgeon General certifies that adequate facilities or personnel for treatment are unavailable. In *United States v. Marshall* (D.C. Cir. 1973), 485 F.2d 1062, it was held that a recommendation against treatment by the Surgeon General did not preclude the court from ordering civil commitment. It thus appears that the facility for treatment under the Federal statute is an arm of the court.

That statute includes language comparable to that of the Illinois statute: "If prior to such certification the Surgeon General determines that the individual cannot be further treated as a medical problem, he shall advise the court. The court shall thereupon terminate the commitment and the pending criminal proceeding shall be resumed."

In *United States v. Thornton* (D. Del. 1972), 344 F. Supp. 249, the court considered such language and concluded that "due process would require that the Court exercise some judgment in ruling on such a termination." (344 F. Supp. 249, 251. See also *United States v. Taylor* (E.D.N.Y. 1969), 305 F. Supp. 1150.) In each case, however, it is agreed that any hearing held by the court upon termination may be informal or that the court may simply accept the report without either testimony or information. It thus appears that under the Federal statute which confers greater authority upon that court than does the Illinois statute, defendant's argument that he is entitled to the "full panoply" of constitutional rights is not supported by any authority.

■■ Regardless of the construction of the statute, we note that defendant did, in fact, have a full hearing upon the merits of the termination before the trial court. The argument of want of notice is not persuasive for the record shows that some three weeks intervened between the presentation of the evidence supporting termination and the evidence in behalf of defendant. It would be difficult to provide more notice of the evidence which defendant must meet in his defense.

Defendant argues that he was denied due process "by the failure of the State to produce any evidence to conclude that the Department of Mental Health had determined that he could no longer be treated as a medical problem." (Ill. Rev. Stat. 1975, ch. 91½, par. 120.9.) He argues that the witness testifying (Kimbrough), was not a physician and that the Department did not introduce any medical testimony that established a medical basis for termination of treatment where that defendant could not further undergo successful treatment. We note that this record shows that defendant testified that he was not physically addicted at the time that he was placed under treatment, for his confinement in jail had eliminated such condition.

■■ The statute cannot be construed to require that there be an adversary proceeding in which expert medical opinion is heard upon the issue of whether further treatment might be successful. As the State argued in the trial court, the defendant was not placed under supervision upon the foundation of expert medical opinion. The statute does not contemplate that in certifying that treatment had not been successfully completed (par. 120.9), the Department has the burden of establishing by expert medical evidence that treatment has not been successfully completed.

■■ We conclude, however, that the cause must be reversed and remanded for want of a sufficient record. Albeit, the error arose at least in part, by reason of the objections made by defendant's counsel. The omission arises from the court's exclusion of a letter or certification by the Department that "The individual can no longer be treated as a medical problem."

The record shows that defendant was assigned by the Department to Stonehedge under agreement or contract. Under the provisions of section 6.14 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1976 Supp., ch. 91½, par. 120.6-14), defendant remained under the jurisdiction of the Department. Nothing suggests a conclusion that the departmental assignment to Stonehedge included a waiver or transfer of jurisdiction, or that the witness, Kimbrough, an employee of Stonehedge, testified as an agent of the Department. Such testimony does not suffice as evidence of departmental determination that treatment shall be terminated.

■■ The State has moved to supplement the record by filing in this court a letter from the Department, dated November 24, 1975, and directed to the Chief Judge, stating that the Department could no longer accept defendant under its supervision and referred him back to the circuit court.

Supreme Court Rule 329 provides:

> "Material omissions or inaccuracies or improper authentication may be corrected by stipulation of the parties or by the trial court, either before or after the record is transmitted to the reviewing court, * * *." Ill. Rev. Stat. 1975, ch. 110A, par. 329.

The trial court did not place the letter from the Department into the record. The State's Attorney did not tender the letter into evidence. Defendant's counsel, prior to presenting his evidence, objected to the consideration of the letter deeming it a personal letter to the judge. The court responded that "Any letter that has been received will not be considered as evidence in this case." The letter cannot be reached as a part of the record through an offer of proof.

It is apparent that the departmental letter was excluded from the record and cannot be said to be an omission or inaccuracy as to what occurred in the proceedings. We conclude that the rule does not authorize this court to permit the filing of the letter as a supplemental record.

Since the record does not adequately disclose that the Department has, in fact, terminated the terms of the defendant under the provision of section 9 of the Dangerous Drug Abuse Act, the judgment of the trial court is reversed and the cause remanded for further proceedings not inconsistent with the views expressed.

Reversed and remanded.

62

Mr. JUSTICE CRAVEN, concurring:

I concur with Mr. Justice Trapp that this case must be reversed and remanded to the trial court for further proceedings. My agreement with that disposition does not mean, however, that I am in agreement with the reasons he assigns. I reach the result that he reaches but for entirely different reasons relating to the procedures for termination of participation in the Dangerous Drug Abuse program.

This case comes on appeal from a bench trial finding defendant guilty of burglary and unlawful use of weapons after his supervision under the Dangerous Drug Abuse Act was revoked. (Ill. Rev. Stat. 1973, ch. 91½, par. 120.9.) Defendant was sentenced to 4 to 12 years for burglary and 1 to 3 years for unlawful use of weapons.

On August 18, 1975, defendant was placed in a program under the Dangerous Drug Abuse Act for two years. On November 19, 1975, the State filed a petition to revoke defendant's participation in the program. At the hearing on the petition, the State's Attorney informed the court that it was proceeding under section 9 of the Dangerous Drug Abuse Act which reads:

"If, before the supervisory period expires, the *Department* determines that the individual cannot be further treated as a medical problem, it shall so advise the court. The court shall thereupon terminate the supervision, and the pending criminal proceedings may be resumed." (Emphasis added.) Ill. Rev. Stat. 1973, ch. 91½, par. 120.9.

The trial court revoked defendant's participation in the program based on the testimony of Arthur Kimbrough, the director of the Stonehedge Foundation. Kimbrough testified to certain details concerning defendant's failure to follow the rules of the Foundation. I do not find, and the record does not show, that Kimbrough was authorized to determine that defendant could not be further treated as a medical problem, nor does the record show that the Department ever made such a determination. Kimbrough was not employed by the Department of Mental Health; however, Stonehedge apparently was approved by the Department as a place for treatment.

On appeal, defendant argues that the termination procedure adopted by the trial court violated his due process rights of notice and an opportunity to be heard. I do not find that the defendant expressly or impliedly asserts that he is entitled to the "full panoply" of constitutional rights.

Defendant asserts that he was given inadequate notice, that the charges against him were impermissibly vague, that he was wrongfully denied discovery, and that he was not given an opportunity to prepare defense. The petition to revoke summarily and by way of conclusions states that

the defendant failed to observe the requirements of the Department of Mental Health. The hearing was held one week after the petition was filed. The defendant moved for a continuance and argued that he be supplied more information as to the basis of the charges. The trial court denied the continuance and did not require the State to produce the information. Apparently, defendant was allowed approximately 30 minutes just before the hearing to interview the State's lone witness, Kimbrough. The State rested its case and the defendant was allowed to present his case three weeks later. At the conclusion of the hearing, defendant's supervision was revoked and he was later found guilty of burglary and unlawful use of weapons.

In the initial step of analyzing a due process question, it must be determined whether the litigant has a liberty or property interest. (*Wisconsin v. Constantineau* (1971), 400 U.S. 433, 27 L. Ed. 2d 515, 91 S. Ct. 507; *Board of Regents v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701.) If there is no such interest, procedural due process does not apply. Whether any procedural protections are due depends on the extent to which an individual will be "condemned to suffer grievous loss." (*Joint Anti-Fascist Refugee Committee v. McGrath* (1951), 341 U.S. 123, 95 L. Ed. 817, 71 S. Ct. 624 (Frankfurter, J., concurring).) Due process also requires a determination of the precise nature of the individual interest involved, as balanced against the governmental interest. *Roth; Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208.

In *People v. Phillips* (1977), 66 Ill. 2d 412, 362 N.E.2d 1037, the court held that a probation officer's consent is necessary for a defendant on probation to be admitted to a drug supervision program. Phillips applies only to one who has been *convicted*. I note that a defendant's participation in a drug treatment program is discretionary, but that fact alone does not bear on the revocation procedure. See generally Van Alstyne, *The Demise of the Right-Privilege Distinction in Constitutional Law*, 81 Harv. L. Rev. 1439 (1968).

Traditional due process safeguards are required by the fourteenth amendment before revocation of parole or probation. (*Morrissey v. Brewer* (1972), 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593; *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756.) Illinois incorporated these constitutional requirements into the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, pars. 1005—6—4, 1003—3—9).

Under the present structure of chapter 91½, if one is convicted, section 10 provides for treatment as a condition of probation. (Ill. Rev. Stat. 1975, ch. 91½, par. 120.10.) Any failure to adhere to the treatment program is a breach of probation and any failure to observe any requirement set down by the Department shall be considered a probation violation. Section 11 similarly provides for treatment as a condition of parole.

Section 9 (Ill. Rev. Stat. 1975, ch. 91½, par. 120.9) does not provide for a revocation hearing from the program when one is admitted before conviction. Therefore, Illinois law presents the anomalous situation of providing a hearing to revoke supervision for one who is convicted and placed on probation or parole, whereas one who is not on probation or parole, indeed not even convicted, and is placed in the program by the court is not expressly subject to statutory revocation procedures.

I view defendant's interest in the program to the same extent as those placed on parole or probation. (*Morrissey; Gagnon.*) On this point, the State argues that defendant has no liberty interest involved because unlike parole or probation revocation, defendant's removal from the drug treatment program would not necessarily result in a prison sentence, since defendant had not yet been convicted. Yet, revocation does subject defendant to the criminal justice system again. Ill. Rev. Stat. 1975, ch. 91½, par. 120.9.

The State concludes that the "remote chance" of defendant's loss of liberty is the only possible basis for due process to apply to revocation proceedings. However, an individual has a legitimate claim to due process protection because of an interest created by state statute. (See *Goss v. Lopez* (1975), 419 U.S. 565, 42 L. Ed. 2d 725, 95 S. Ct. 729; *Goldberg v. Kelly* (1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011; *Connell v. Higginbotham* (1971), 403 U.S. 207, 29 L. Ed. 2d 418, 91 S. Ct. 1772.) Defendant has a vital interest in continued participation in the program, not only for the betterment of his own health, but also because the court will dismiss the pending criminal charges against him if he successfully completes the program. (Ill. Rev. Stat. 1975, ch. 91½, par. 120.9.) Therefore, defendant is entitled to uninterrupted treatment if he is, in fact, eligible. See *Goldberg;* but see *Mathews v. Eldridge* (1976), 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893.

Also, weighing in my consideration is the fact that, as presently written, section 9 permits the arbitrary and capricious act of certifying the accused as no longer treatable as a medical problem without giving him a chance to be heard. Such is not even minimal due process.

These factors must be balanced against the State's interest of eliminating uncooperative persons from the program where they may hamper the efforts to rehabilitate others.

I conclude that once an accused is admitted to a drug rehabilitation program under section 9, the burden on the State to conduct a hearing is slight, and the potential loss to the accused is enormous, so that the accused's interest in continued participation in the program is within the protection of the fourteenth amendment. A similar interpretation has been given to 28 U.S.C.A. §2902(c) (1977 Supp.). (*United States v. Taylor* (D. N.Y. 1969), 305 F. Supp. 1150; *United States v. Thornton* (D. Del.

1972), 344 F. Supp. 249.) The remaining question is the extent of the procedural safeguards required by the concept of due process.

Of course, due process is a flexible concept evolving over time. (*E.g., Wolff v. McDonnell* (1974), 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963.) One of the fundamental requisites of due process is timely notice with an opportunity to prepare (*Boddie v. Connecticut* (1971), 401 U.S. 371, 28 L. Ed. 2d 113, 91 S. Ct. 780), and an opportunity to be heard (*Grannis v. Ordean* (1914), 234 U.S. 385, 58 L. Ed. 1363, 34 S. Ct. 779). The hearing must be "at a meaningful time in a meaningful manner." *Armstrong v. Manzo* (1965), 380 U.S. 545, 14 L. Ed. 2d 62, 85 S. Ct. 1187.

I would hold that a revocation hearing must be held for one under treatment under section 9. The hearing need not be conducted in the formal matter of a criminal trial, but it should accord the accused at least the following rights: (1) Written notice of the alleged violation; (2) an opportunity to be heard and present witnesses; (3) disclosure to the accused of the evidence against him; and (4) the right to confront and cross-examine adverse witnesses. (See *Morrissey; Gagnon.*) The reference is to minimal due process, not "full panoply." The process should be flexible enough to admit evidence including letters, affidavits, and other material that might not be admissible in a trial. The State has the burden of proving that the defendant cannot be further treated as a medical problem as determined by the *Department.*

Until these basic rights are fulfilled, defendant's termination is a nullity.

Mr. PRESIDING JUSTICE MILLS, dissenting:

A paradox.

Mr. Justice Trapp writes the opinion.

Mr. Justice Craven concurs in the result but dissents in the reasoning and therefore concurs.

I concur in the reasoning but disagree with the result and therefore dissent.

My observations will—hopefully—be brief.

FIRST. I am in full accord with Mr. Justice Trapp's analysis and treatment of the Dangerous Drug Abuse Act of Illinois and his thoughtful comparison of it with corresponding Federal legislation. In that reasoning, I concur.

SECOND. But I cannot agree with his conclusion that the letter from the Department of Mental Health cannot be made of record, even at the reviewing stage. Illinois Supreme Court Rule 366(3) clearly provides that a reviewing court may "order or permit the record to be amended by correcting errors or by adding matters that should have been included." And I am of the belief that this provision is applicable to the situation posited here.

That letter to Judge Berkowitz was an official one from the Department of Mental Health, involving a particular case pending before him, and was sent to him in his official capacity as the presiding judge. It was not sent to him in his generic capacity, nor was it a personal communication. I think he simply erred in not considering it as evidence and in not placing it of record. When a judge mistakenly fails to put an official communication to him in the file of the case to which it applies does not mean that it should not have been so deposited. Judges err every day. Yet even when they rule correctly—but for the *wrong reasons*—as long as reviewing courts can sustain them, we do. Our situation does not seem to me to be that much different. It is merely a variation.

The judge presiding should have considered the letter, admitted it into evidence and made it a part of the record and file. He didn't. But the letter still exists and I believe that we have the authority to correct the error and settle the matter right here, rather than ship it back for more footwork!