THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIE C. MOORE, Defendant-Appellant.

Fourth District   No. 17578

Opinion filed August 9, 1982.

Daniel D. Yuhas and Jeffrey D. Foust, both of the State Appellate Defender's Office, of Springfield, for appellant.

Anthony B. Cameron, State's Attorney, of Quincy (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MILLS delivered the opinion of the court:

Dangerous Drug Abuse Act case.

If a defendant is certified to have successfully completed a licensed drug treatment program, can the trial court nevertheless refuse to dismiss the underlying criminal proceeding?

No.

We reverse.

## FACTS

A somewhat lengthy recitation of the facts is necessary for a proper understanding of this case. On April 14, 1975, Moore was charged with theft in that he exerted unauthorized control over an automobile. At his arraignment, defendant expressed a desire to undergo treatment pursuant to the Dangerous Drug Abuse Act (DDAA) (Ill. Rev. Stat. 1981, ch. 91½, par. 120.3 *et seq.*). The Department of Mental Health and Developmental Disabilities (DMH) subsequently determined that defendant was acceptable for treatment under the DDAA. On July 22, 1975, defendant voluntarily waived his right to a jury trial, and stipulated evidence was heard on the automobile theft charge. A finding of guilt was deferred pursuant to section 9 of the DDAA (Ill. Rev. Stat. 1981, ch. 91½, par. 120.9) and a written order was entered committing defendant for treatment under the Act.

At the July 22 hearing, the defendant was told that during his supervision, he would have to comply with the requirements of the DMH. If he did so, he could be "discharged, dismissed from this charge." Among the conditions of defendant's supervision contained in the order committing him for treatment were:

"2.That the Defendant shall submit to the supervision and treatment of the said Department [DMH] *** until discharged by said Department *or* by this Court.

3.That the Department of Mental Health *** notify this Court of any proposed release of said Defendant from institu-

tionalization, supervision or treatment ten (10) days prior to such release.

4.That *** in the event the Defendant is to be discharged from the supervision of the Department [DMH] or from institutionalization, [the DMH is to] provide the Court recommended treatment or programs for post release supervision." (Emphasis added.)

Also, at a preliminary hearing held on May 22, 1976, the court stated:

"If *** you stayed your period of time that the Department [DMH] required and did it successfully, then the trial [on charges of theft over $150] would not be resumed."

The court apparently did not set a specific time limit on the period of defendant's supervision.

Following commitment to custody of the DMH, defendant was placed in Gateway House, a residential therapeutic community in Springfield. In June 1976, defendant requested inpatient treatment from the Western Illinois Counsel on Alcoholism and was admitted to the Andrew McFarland Zone Center, a facility operated by the DMH, for such treatment. On July 22, 1976, defendant was discharged from McFarland. According to the discharge document, the discharge was absolute and the defendant was released to himself. The defendant's after-care plan was described in its entirety as "Reside at Salvation Army with follow-up provided there." The defendant's discharge was signed by a medical doctor, a registered psychologist, and the superintendent of McFarland Zone Center.

On July 28, 1976, an alcoholism counselor at McFarland advised the trial court by letter that defendant "had completed our program" and was residing at the "in-resident" program of the Salvation Army Men's Social Center in Springfield. The letter stated that the staff at McFarland would be in frequent communication with both defendant and the director of the Men's Social Center and would "continue to advise the court under the provisions of the Dangerous Drug Abuse Act." A subsequent letter dated August 11, 1976, from a registered psychologist at McFarland Zone Center, advised the court that the DMH discharged defendant from its supervision and care as improved. The letter further stated that defendant voluntarily left the "in-resident" program of the Salvation Army on August 6, 1976, that his present whereabouts were unknown, and that the DMH could not provide the court with any further recommended treatment for defendant.

On July 30, 1976, defendant filed a motion to dismiss the charges against him, on the ground that he had been discharged by the DMH

after successfully completing his program of treatment. The State subsequently filed a petition to resume criminal proceedings against defendant on the ground that he had left the DMH without being discharged by either the Department or by the court, which was granted on August 23, 1981. A hearing on defendant's motion to dismiss was held on September 13, 1976. The defendant did not personally appear at the hearing. Since defendant had been directed to personally appear on that date, a warrant for his arrest was issued. At the conclusion of the hearing, the court stated:

> "I want to make it very clear for the record and for your information that the Court will in no way allow its Judicial function to be usurped and to let the Department [DMH] make the determination as to the discharge of this Defendant is an usurption of the Judicial function of the Government by the committee in [sic] and contrary to the Constitution."

Upon defendant's release in August 1981 from a Federal prison where he served a sentence on an unrelated charge, he was returned to Quincy on the basis of the outstanding warrant for his arrest. The defendant filed a second motion to dismiss on August 23, 1981, which was denied following a hearing on August 31, 1981. As a basis for its ruling, the court relied mainly on the fact that the DMH provided no advance notice of its intention to discharge defendant, and did not recommend any follow-up treatment programs for defendant as required by the court's order of commitment. The court further implied that defendant should have interpreted the two-year limitation on supervision provided for in section 9 of the DDAA as an indication that defendant "was subject to the jurisdiction of the court for the two years." At the same hearing, the court entered a judgment of guilty on the charge of theft of property having a value in excess of $150.

On October 30, 1981, the defendant was sentenced to 4 years' imprisonment, with credit for time spent under supervision of the DMH.

## OPINION

Section 9 of the DDAA provides in pertinent part:

> "If the court *** determines that such an individual is an addict and is likely to be rehabilitated through treatment, the individual shall be placed under the supervision of the licensed program designated by the [Dangerous Drugs] Commission for treatment, *** for a maximum of 2 years and [the court] may require such progress reports on the individual as the court finds necessary. ***
>
> Whenever an individual is placed under the supervision of a

licensed program designated by the Commission for treatment under this Section, the *pending criminal proceeding against him shall be continued without final disposition and shall be dismissed if a licensed program designated by the Commission certifies to the court that the individual has successfully completed the treatment program.* If, by the expiration of the period, a licensed program designated by the Commission has not been able to certify that the individual has completed his treatment program, the pending proceeding may be resumed. If, however, the court believes that the individual will complete his treatment on a voluntary basis, it may, in its discretion, discharge the individual and dismiss the criminal proceeding. If, before the supervisory period expires, the licensed program designated by the Commission determines that the individual cannot be further treated, it shall so advise the court. The court shall thereupon terminate the supervision, and the pending criminal proceeding may be resumed. Whenever a criminal proceeding is resumed, time spent in treatment shall be deducted from any sentence imposed." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 91½, par. 120.9.

■ We hold that the discharge document which was executed on June 22, 1976, coupled with the letter from Andrew McFarland Zone Center of August 11, 1976, amounts to a certification that defendant successfully completed the DMH's treatment program within the meaning of the above statutory provision. As previously indicated, the discharge is denominated "absolute" and states that the defendant is released to himself. Subsequent to his release, defendant was to reside at the Salvation Army Men's Social Center, which is not a treatment facility licensed or designated by the Dangerous Drugs Commission to provide treatment for dangerous drug abuse. Moreover, the letter of August 11, 1976, clearly and unambiguously states that defendant was discharged from the supervision of the DMH as improved. Although the specific language of the statute that the DMH certify "to the court that [defendant] has successfully completed the treatment program" is not included in any of these documents, we do not deem this deficiency to be determinative of the outcome of this case in view of the substantially similar import of the words which the DMH actually used.

■ Furthermore, we note that section 9 of the DDAA utilizes mandatory language as to what is to be done with a defendant upon certification of his successful completion of a dangerous drug abuse treatment program; the pending criminal proceeding *shall* be dis-

missed if and when such certification is received by the trial court within the period of defendant's supervision, which is not to exceed two years. The implication of this statutory provision is that when a certificate of successful completion of a drug abuse treatment program is received by the trial court, it in effect loses jurisdiction over defendant; it can take no further action in the case except to dismiss the underlying charge(s).

In the present case, it is apparent that the notice requirements imposed by the trial court were designed to assure that the court retained control over the disposition of defendant after his successful completion of the drug abuse treatment program. The inclusion of such instructions in an order of commitment issued pursuant to section 9 of the DDAA conceivably serves little, if any, useful purpose, for when the trial court commits a defendant to supervision under that statutory provision, it in effect delegates to the DMH the power to release defendant from supervision, and thus from the court's jurisdiction, if and when the defendant successfully completes the drug treatment program. Thus, the DMH's failure to comply with the notice of intended release and recommended post-release treatment requirements included in the court's order of commitment did not negate defendant's right to have the proceedings against him dismissed when the court received the DMH's certification of defendant's successful completion of the drug treatment program.

A final note. It is unlikely that this case would have reached us in its present posture if the trial court's order had specifically informed DMH personnel of the exact professional conclusions or findings which would constitute a certification that defendant had successfully completed the drug abuse treatment program within the meaning of section 9 of the DDAA. This would likewise have specifically advised defendant of the type and format of certification which would result in his release from supervision. Clear communication and close cooperation between all parties involved is essential in order to fully effectuate the rehabilitative purposes of the DDAA and to prevent defendants committed for treatment under the Act from becoming the innocent victims of murky imprecision or bureaucratic misunderstanding.

Reversed.

GREEN, P. J., and WEBBER, J., concur.