THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN P. BECKLER, Defendant-Appellant.

Second District   No. 83—212

Opinion filed February 1, 1984.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Sally A. Swiss, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, John P. Beckler, was charged by information with burglary (Ill. Rev. Stat. 1979, ch. 38, par. 19—1(a)), possession of burglary tools (Ill. Rev. Stat. 1979, ch. 38, par. 19—2), and theft of property with a value in excess of $150 (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(a)(1)). On June 8, 1981, defendant filed a petition to be treated as an addict under the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1979, ch. 91½, par. 120.1 et seq.). On July 24, 1981, the trial court found defendant to be an addict likely to be rehabilitated through treatment. Defendant pleaded guilty to all three charges and the trial

court deferred entering a judgment of conviction on these pleas in accordance with section 9 of the Dangerous Drug Abuse Act (Ill. Rev. Stat., 1980 Supp., ch. 91½, par. 120.9). The trial court then placed defendant under the supervision of Treatment Alternatives to Street Crimes, Inc. (TASC), for treatment for a period of two years.

On October 21, 1982, the State filed a petition to revoke defendant's "probation" because defendant allegedly left the residential treatment center to which he was assigned without permission. On November 10, 1982, after a hearing, the trial court denied this petition, and ordered defendant back to the treatment center. On November 24, 1982, TASC examined defendant, determined that he was unacceptable for TASC services because he did not demonstrate the likelihood of rehabilitation, and so informed the trial court by letter. The letter was a summary report containing only the conclusion that defendant did not demonstrate the likelihood for rehabilitation. On December 20, 1982, based on the letter stating defendant's unacceptability to TASC, the trial court terminated defendant's supervision without a hearing and entered judgment on the prior guilty pleas. Defendant later moved to vacate this judgment claiming he was entitled to a hearing before termination of supervision. On February 7, 1983, over defendant's objection that he was entitled to a revocation hearing and minimal due process rights prior to the termination of his supervision, the trial court held a sentencing hearing and sentenced defendant to concurrent five-year terms of imprisonment for burglary and theft over $150.

Defendant appeals from the judgments of conviction and sentences. The only issue we address on appeal is whether the trial court erred in terminating defendant's supervision under section 9 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1981, ch. 91½, par. 120.9) without affording him even minimal due process.

Defendant contends that he was entitled to due process before the termination of his supervision because "a liberty interest within the ambit of the protection afforded by the due process clause" of the fourteenth amendment was at stake. He asks this court to follow the concurring opinion of Justice Craven in *People v. Prather* (1977), 55 Ill. App. 3d 54, 65, 370 N.E.2d 831, and hold that due process requires (1) written notice of the alleged violations; (2) an opportunity to be heard and to present witnesses; (3) disclosure to the accused of the evidence against him; and (4) the right to confront and cross-examine adverse witnesses before supervision may be terminated.

Whether an individual is entitled to procedural due process depends on whether he is being deprived of a liberty or property inter-

est. (*Board of Regents v. Roth* (1972), 408 U.S. 564, 569, 33 L. Ed. 2d 548, 556, 92 S. Ct. 2701, 2705; see also *Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 293-94, 395 N.E.2d 1376.) Defendant contends he has a liberty interest in remaining under supervision. Thus, we must determine whether an individual placed under supervision under section 9 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1981, ch. 91½, par. 120.9) has a liberty interest in remaining under supervision so that he is entitled to procedural due process prior to the termination of that supervision.

A person who is an addict and is charged with a crime has no constitutional or common law right upon a finding of guilty or a plea of guilty to defer the entry of a judgment of conviction. Section 9 of the Dangerous Drug Abuse Act (Ill. Rev. Stat., 1980 Supp., ch. 91½, par. 120.9) provided defendant with the opportunity to elect to submit to treatment and, because he was accepted by a licensed treatment program and the court determined it was appropriate, defendant was able to be placed under supervision and have the entry of the judgments of conviction deferred pending the outcome of his treatment. If defendant's treatment period had been successfully completed, the statute would have entitled him to discharge of the criminal proceedings. (*People v. Moore* (1982), 108 Ill. App. 3d 260, 264-65, 439 N.E.2d 98.) Thus, defendant has an interest, created by this statute, in remaining under supervision until his treatment period was completed and the criminal proceedings were discharged.

Section 9 also provides that "[i]f, before the supervisory period expires, the licensed program *** determines that the individual cannot be further treated, it shall so advise the court. The court shall thereupon terminate the supervision, and the pending criminal proceeding may be resumed." Ill. Rev. Stat. 1981, ch. 91½, par. 120.9.

■ Where a State statute creates a right and specifies that that right may be forfeited only upon the misconduct of an individual, then that individual has a liberty interest which requires that procedural due process be accorded the individual in the determination whether the misconduct has occurred. (*Wolff v. McDonnell* (1974), 418 U.S. 539, 557-58, 41 L. Ed. 2d 935, 951-52, 94 S. Ct. 2963, 2975; see also *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756; *Morrissey v. Brewer* (1972), 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593.) The purpose of due process is to protect the individual from the arbitrary action of government. (*Meachum v. Fano* (1976), 427 U.S. 215, 226, 49 L. Ed. 2d 451, 460, 96 S. Ct. 2532, 2539.) On the other hand, not every change in circumstances of a defendant is sufficient to invoke the protections of the due process clause. 427 U.S.

215, 224, 49 L. Ed. 2d 451, 459, 96 S. Ct. 2532, 2538.

■ While section 9 does not specify that supervision may be terminated only upon the misconduct of the person undergoing treatment, it does require a determination by the licensed program that the individual cannot be further treated. It is apparent that such a determination must be based on events occurring during the course of treatment. Because defendant may suffer the loss of his liberty by having judgment entered and by being subsequently sentenced upon termination of supervision under section 9, the placing of the absolute control of that determination in the discretion of the licensed program designated by the Commission, a discretion which may be subject to arbitrary exercise or abuse, requires certain minimal due process protection. Thus, we hold that section 9 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1981, ch. 91½, par. 120.9) creates a protected liberty interest in an individual placed under supervision under section 9 which requires that procedural due process be accorded that individual before the court may terminate the supervision.

Our holding that a liberty interest is created by section 9 is in accord with Justice Craven's concurring opinion in *People v. Prather* (1977), 55 Ill. App. 3d 54, 63, 370 N.E.2d 831. Other jurisdictions have found a liberty interest under the Federal or State constitutions in similar statutes providing for drug treatment programs as an alternative to criminal conviction or sentence. *E.g., United States v. Thornton* (D. Del. 1972), 344 F. Supp. 249; *People v. Ramirez* (1979), 25 Cal. 3d 260, 599 P.2d 622, 158 Cal. Rptr. 316; *State v. Grimme* (Iowa 1979), 274 N.W.2d 331.

The State relies on the opinion of Justice Trapp in *People v. Prather* (1977), 55 Ill. App. 3d 54, 370 N.E.2d 831. However, that opinion does not directly address the question whether section 9 creates a liberty interest. It concludes only that a "full panoply" of constitutional rights does not apply to the termination of supervision under section 9.

Additionally, Justice Trapp's opinion in *Prather* concludes that the termination of supervision issue is controlled by *People v. Phillips* (1977), 66 Ill. 2d 412, 362 N.E.2d 1037. However, we believe *Phillips* is distinguishable for two reasons. First, it dealt with a separation of powers question rather than a due process question. Second, *Phillips* concerned the issue of the consent of an individual's probation officer before an individual could be eligible to be placed under supervision. *Phillips* did not involve termination of a placement under supervision.

Since we hold that defendant was entitled to due process prior to termination of his supervision because he had a liberty interest, we

must determine what procedures are required to provide due process.

Termination of supervision under section 9, before the expiration of the period of supervision, can occur only when the licensed program determines that the individual cannot be further treated. As the court noted in *People v. Ramirez* (1979), 25 Cal. 3d 260, 273, 599 P.2d 622, 630, 158 Cal. Rptr. 316, 324, this determination is inherently subjective and is not as readily adapted to procedural due process safeguards as are decisions that turn on specific factual determinations. However, we agree with Justice Craven in his concurring opinion in *People v. Prather* (1977), 55 Ill. App. 3d 54, 65, 370 N.E.2d 831, that due process requires that a hearing must be held for one under treatment under section 9 before the court makes a determination on the licensed program's decision that the individual cannot be further treated. We also are substantially in accord with his suggestion of the rights which must be given a defendant. Defendant's status as a person under the supervision of a licensed program is akin to that of a probationer. Thus, we believe that the individual subject to termination should be accorded the following rights: (1) written notice of the reasons the individual cannot be further treated; (2) an opportunity to be heard and to present witnesses; (3) disclosure to him of the evidence against him; and (4) the right to confront and cross-examine adverse witnesses. (See also *State v. Grimme* (Iowa 1979), 274 N.W.2d 331, 336-37.) We also agree that, where appropriate, this procedure should be flexible enough to admit evidence including letters, affidavits, and other materials that might not be admissible in a trial. (See *People v. Prather* (1977), 55 Ill. App. 3d 54, 65, 370 N.E.2d 831, (Craven, J., concurring); see also *United States v. Thornton* (D. Del. 1972), 344 F. Supp. 249; *State v. Grimme* (Iowa 1979), 274 N.W.2d 331, 336-37.) The purpose of these procedures is to insure that the determination by the licensed program that defendant cannot be further treated is not arbitrary. See *Meachum v. Fano* (1976), 427 U.S. 215, 226, 49 L. Ed. 2d 451, 460, 96 S. Ct. 2532, 2539.

■ It is apparent from the record that defendant was not accorded the procedural safeguards set out above. While the State maintains that the prior hearing on its petition to revoke defendant's "probation" was sufficient to satisfy due process, that hearing resulted in a finding that the State had not proved its charges. Defendant's termination occurred later when the court received a letter from TASC stating defendant was unacceptable for further TASC services because he did not demonstrate the likelihood of rehabilitation. Defendant was not given notice of the reasons for this determination, an opportunity to be heard and present evidence, disclosure of the ev-

idence against him, or the opportunity to confront and cross-examine adverse witness. Defendant's termination without these safeguards denied him due process. Therefore, the judgments of conviction and sentences must be reversed, and the cause is remanded for a hearing in conformance with this opinion to determine whether defendant's supervision under section 9 should be terminated.

For the foregoing reasons the judgments of the Du Page County circuit court are reversed and the cause is remanded for further proceedings.

Reversed and remanded.

HOPF and NASH, JJ., concur.