THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
STEPHEN T. PAXTON, Defendant-Appellant.

Third District   No. 3—84—0302

Opinion filed August 14, 1985.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

On May 25, 1982, defendant Stephen T. Paxton was charged in the circuit court of Peoria County with having committed burglary in violation of section 19—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 19—1(a)). Defendant filed a petition electing to undergo treatment as an addict pursuant to the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1983, ch. 91½, par. 120.8 et seq.). After a hearing, the court found the defendant eligible to make the election and referred the defendant for an evaluation by the Dangerous Drug Commission or its designee to determine whether the defendant was an addict and whether he was likely to be rehabilitated through treatment. A report dated August 20, 1982, and signed by Elizabeth Alsup-Crawley, of T.A.S.C. (Treatment Alternatives to Street Crimes), appears next in the record. It contains the requisite findings and recommends "six months or longer residential treatment at Interventions, Inc./Crossroads."

At a subsequent hearing, the court accepted the defendant's election. The defendant, upon receiving appropriate admonitions, pleaded guilty to burglary. After accepting the plea, the court placed defendant on supervision for a period of two years and named T.A.S.C. as the agency responsible for treatment.

Periodic progress reports from T.A.S.C. were filed with the court from September 1982 until December 1983, when a report from Elizabeth Alsup-Crawley informed the court that the defendant failed to improve in treatment and had been discharged from the T.A.S.C. program effective November 17, 1983. On December 19, 1983, the State's Attorney petitioned for termination of the defendant's supervision pursuant to section 9 of the Dangerous Drug Abuse Act (Ill.

Rev. Stat. 1983, ch. 91½, par. 120.9). At the defendant's hearing of January 27, 1984, the State called Alsup-Crawley, who had responsibility for monitoring defendant's progress in the T.A.S.C. program. Alsup-Crawley testified that defendant had reached a third "jeopardy status" which resulted in automatic discharge from T.A.S.C. Defendant's first and second jeopardy status had resulted from failure to make progress in treatment and returning late from an overnight pass, respectively. She could not specify the details of defendant's conduct which resulted in the third jeopardy status, and could state only that defendant's counselor at the last treatment facility had reported that defendant "had not fulfilled the commitments and was not making progress in treatment." The counselor did not testify. Over defense counsel's objection that the conclusionary testimony of Alsup-Crawley effectively deprived the defendant of due process of law, the court ruled that under the circumstances the State's evidence was sufficient to terminate supervision and resume criminal proceedings pursuant to the statutory scheme.

Despite the adverse ruling, defense counsel requested an opportunity to be heard. The defendant testified on his own behalf. He stated that he had started working at the Pizza Hut the day before T.A.S.C. terminated him. At he time of the hearing, defendant was also in training for a position as sales representative for the Iowa Manufacturing Solar Company. Defendant no longer used alcohol, was regularly attending weekly meetings of Alcoholics Anonymous, and he had not used drugs since his arrest for burglary. Defendant believed that his third jeopardy status had resulted because he had a "bad attitude" and his counselor ("Joan somebody or other") did not feel he was working on his problem of relating with women.

At the conclusion of the evidence and arguments of counsel, the court found that the State had sustained its burden and terminated defendant's supervision. In reaching his conclusion, the trial judge made the following observations:

> "I think the young man has rehabilitated himself. I think sentencing him to prison is a waste of time. But I am trying to follow the Statute. I am trying to get the questions decided by the Appellate Court right on the issue. And let them tell us what this law is. I think that if TASC, this will be the reason for my ruling, if TASC reports back to the Court that he cannot be rehabilitated or cannot successfully complete the program or that the individual cannot be further treated, then I terminate the supervision."

The defendant was subsequently sentenced to three years, the

minimum prison sentence for burglary, without objection from the State. (A prior burglary conviction precluded probation.) The court observed that with credit for the time spent on supervision and good time, no actual prison time would be served.

In this appeal, the defendant presents three arguments challenging the sufficiency of the State's evidence at the termination hearing, the trial court's ruling on defense counsel's due process objections, and the trial court's ruling that it was without authority to continue defendant's supervision given the State's proof that the designated treatment program had determined defendant could be treated no further. We reverse and remand for further proceedings.

■ Initially, we reject defendant's unsupported contention that proof that he was drug-free and had obtained employment before the supervisory period had ended, without more, precluded a determination that defendant could not be further treated at the rehabilitation facility. Obviously, the treatment program's rehabilitative goal is to treat not only the symptoms of addiction, but to attempt to expose its cause to the addict so that he/she might not necessarily repeat the pattern of drug use upon release. The defendant's evidence of freedom from drugs and alcohol and the fact that he was employed did not overcome the State's evidence that the treatment program had, in fact, determined that he could no longer be treated.

■ The ultimate issues before the trial court were whether the program terminated the defendant upon the finding that he could not be further treated and whether that subjective determination was made arbitrarily. (See *People v. Beckler* (1984), 121 Ill. App. 3d 436, 459N.E.2d 672, and *People v. Sinclair* (1980), 85 Ill. App. 3d 688, 407 N.E.2d 225.) The statutory provision here at issue is contained in the last paragraph of section 9 of the Dangerous Drug Abuse Act: "If, before the supervisory period expires, the licensed program designated by the Commission determines that the individual cannot be further treated, it shall so advise the court. The court shall thereupon terminate the supervision, and the pending criminal proceedings may be resumed." (Ill. Rev. Stat. 1983, ch. 91½, par. 120.9.) As observed by the court in *Beckler*, "the placing of the absolute control of [the] determination in the discretion of the licensed program designated by the Commission, a discretion which may be subject to arbitrary exercise or abuse, requires certain minimal due process protection." Within the ambits of that protection is the right to confront and cross-examine adverse witnesses. (*People v. Beckler* (1984), 121 Ill. App. 3d 436, 440, 459 N.E.2d 672, 675.) Where, as here, the evidence of the reasons for defendant's discharge from the treatment program

was based entirely upon speculation and hearsay testimony, we do not find that minimal due process protection was afforded. Defendant was entitled to confront and cross-examine the counselor whose report to Alsup-Crawley resulted in defendant's automatic discharge from T.A.S.C. Alsup-Crawley admitted at the hearing that she lacked knowledge of facts underlying defendant's third "jeopardy status." The defendant opined that his attitude and relations with women resulted in his discharge from the last treatment facility. We do not find that the defendant's speculation of the counselor's conclusions constitutes a fair substitute for the right to confront and cross-examine the counselor in court.

■ The State argues that *Beckler* held that the termination proceedings should be flexible, thereby admitting hearsay testimony that might not be admissible at trial. However, in light of the general lenient purpose of the Act (*People v. Caldwell* (1983), 118 Ill. App. 3d 1027, 455 N.E.2d 893, citing *People v. DuMontelle* (1978), 71 Ill. 2d 157, 374 N.E.2d 205), the flexibility in such proceedings should be applied in a defendant's favor.

■ Finally, we agree with the defendant that the trial court erred in ruling that it had no discretion in conducting the proceedings before him upon the State's proof that the T.A.S.C. program determined that the defendant could not be further treated and that he had been unsuccessfully discharged. The statutory language cannot be read so narrowly. The trial court's discretion in such matters lies in its determination of the fairness or arbitrariness of the treatment program's subjective decision. If, upon remand, the court finds that the defendant's discharge from the program resulted from the fact that he was rehabilitated, and not for another reason related to the rehabilitation goal, then it may, in its discretion, deny the State's petition.

For the foregoing reasons, we reverse the judgments of the circuit court of Peoria County and remand for further proceedings.

Reversed and remanded.

STOUDER and WOMBACHER, JJ., concur.